Filed 5/19/23  Zohrabian v. PNC Bank CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TALIN ZOHRABIAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PNC BANK, N.A.,<br><br>    Defendant and Respondent. | B316041<br><br>(Los Angeles County Super. Ct. No. 20CMCV00019) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge. Affirmed.

        Law Office of Michael N. Berke and Michael N. Berke for Plaintiff and Appellant.

        Akerman, Parisa Jassim and Alejandro P. Pacheco for Defendant and Respondent.

## INTRODUCTION

After being served with a levy, a third person has a duty to pay obligations owing to the judgment debtor by delivering them to the levying officer unless there is "good cause" not to do so. (Code Civ. Proc., § 701.010.)[1] Talin Zohrabian filed a complaint against BBVA USA (BBVA), a bank, for failure to seize funds in a trust account after being served with writs of execution and notices of levy.[2] In response, BBVA moved for summary judgment, contending it had good cause for not delivering the funds held in the trust account to the levying officer absent a court order authorizing seizure of funds from that account.

The trial court granted BBVA's motion, concluding Zohrabian failed to proffer any evidence to dispute BBVA's contention that it had good cause to decline to deliver the trust account funds to the levying officer. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Zohrabian obtained a judgment against nonparties Xavier Mitchell and Dane Belle (the judgment debtors) in the amount of $24,295.00 in a case entitled *Talin Zohrabian v. Xavier*

---

1      All further undesignated statutory references are to the Code of Civil Procedure.

2      BBVA was acquired by PNC Bank, N.A. (PNC), and BBVA no longer exists. We granted PNC's motion to substitute itself as a party in this appeal in place of BBVA under California Rules of Court, rule 8.814. The parties refer to the respondent in their appellate briefs as BBVA, however, and not to PNC as the successor in interest. Thus, for ease of reference, we will refer to the respondent as BBVA.

*Mitchell, et al.*, Los Angeles Superior Court Case No. 15P04303 (the underlying action). On October 1, 2018, Zohrabian served BBVA with writs of execution and notices of levy for both judgment debtors. The notices of levy directed BBVA to seize checking and savings account funds held in the names of the judgment debtors. They did not specifically reference the judgment debtors' beneficial or other interests in any trust account.[3]

To prevent erroneous seizure of customer account funds, BBVA's policy directs employees not to automatically seize account funds pursuant to a levy unless two of three pieces of information provided in the levy match customer information on BBVA's system: (1) customer name; (2) customer address; and (3) taxpayer identification (TIN) or social security number. BBVA located an account titled "DAX Family Trust." The account was held in the name of the DAX Family Trust since January 16, 2018. The signature card associated with the account was signed by the judgment debtors as trustees of the DAX Family Trust, identified as a revocable trust. The trust account was associated with a TIN not included in the levies, and the address for the account did not match the addresses in the levies.

BBVA declined to seize the DAX Family Trust account funds. Zohrabian filed a motion to enforce the levy in the underlying action. The court granted the motion and ordered BBVA to "honor the Notice of Levy." BBVA then filed an ex parte

---

3 The notices of levy described the property to be levied upon as follows: "Any and all Stock Certificates, Checking Accounts, Saving Accounts, Certificates of Deposit, Safe-Deposit Boxes, and Money Market Accounts held at [BBVA] in the names[s] of the [judgment debtors]."

application, seeking "clarity as to whether the Court orders BBVA to freeze and turn over the revocable trust account funds belonging to Xavier Mitchell and Dana Belle, or whether the Court holds BBVA directly liable for the amount of the judgment." The court issued a subsequent ruling, clarifying as follows: "The court ordered and continues to order the moving party, a financial institution, to comply with the levy. The court did not order payment of any funds other than those belonging to customers or their creditors. The court did not find liability on the part of the bank, nor did it vindicate the bank's actions." By the time the court issued its order, however, the DAX Family Trust account had been closed.[4]

In 2020, Zohrabian filed this lawsuit against BBVA, alleging two causes of action: (1) noncompliance with levy under section 701.020; and (2) creditor's suit. The trial court sustained BBVA's demurrer to the second cause of action with leave to amend. Zohrabian did not amend the complaint; thus, only the first cause of action remained.

BBVA moved for summary judgment, arguing Zohrabian failed to establish an element of her claim. BBVA argued it had good cause for not delivering the funds held in the DAX Family Trust absent an order authorizing seizure from that account. It claimed that the name, address, and TIN for the DAX Family Trust did not match the information on the levying documents, and by the time Zohrabian obtained an order from the court directing BBVA to seize funds from the trust account, the

---

4       When Zohrabian served the levy notices on October 1, 2018, the trust account had a balance of $27,723.41. All funds were withdrawn, however, by March 2019, and the account was closed on July 25, 2019.

4

judgment debtors had closed the account. In opposition, Zohrabian contended BBVA violated the levy notices to withhold funds from the accounts in the names of the judgment debtors by not seizing the funds in the DAX Family Trust account, and triable issues of material fact exist regarding whether BBVA had good cause not to withhold those funds.

The trial court granted BBVA's motion, and entered judgment in its favor. Zohrabian appeals from the judgment.

## DISCUSSION

### A.   *Standard of Review*

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id*., subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons."

(*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

## B. *Statutory Scheme*

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable. In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted. The EJL appears in sections 680.101 through 724.260 and is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.)

Under the EJL, after being served with a levy, a third person has a duty to pay obligations owing to the judgment debtor by delivering them to the levying officer unless there is "good cause" not to do so. (§ 701.010, subd. (b).) "'Good cause' includes, but is not limited to, a showing that the third person did not know or have reason to know of the levy from all the facts and circumstances known to the third person." (§ 701.010, subd. (c).) A third person who fails to deliver to the levying officer amounts owed to the judgment debtor without good cause becomes personally liable to the judgment creditor. (§ 701.020, subd. (a).)

A judgment creditor may satisfy its judgment by levying on its judgment debtor's deposit accounts. (§ 700.140.) The interest of a trust beneficiary, however, is not subject to execution. (See § 699.720, subd. (a)(8) ["[t]he interest of a trust beneficiary" is "not subject to execution"].) "The judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition . . . by a judgment creditor to a court having jurisdiction over

6

administration of the trust . . . ." (§ 709.010, subd. (b).) "The judgment debtor's interest in the trust may be applied to the satisfaction of the money judgment by such means as the court, in its discretion, determines are proper . . . ." (*Ibid*.)

## C. *Analysis*

Zohrabian contends the trial court erred by granting BBVA's motion for summary judgment because triable issues of facts exist regarding: (1) whether BBVA was obligated to turn over funds that were in the DAX Family Trust account at the time of the levy; and (2) whether BBVA had good cause to refuse to honor the levy against the DAX Family Trust account.

In support of her first point, Zohrabian's argument is limited to the following: "Service of a notice of levy upon [ ] BBVA created an immediate execution lien in favor of . . . Zohrabian on all amounts in the subject deposit accounts so levied in the name the judgment debtor at the time of service. [Code of Civil Procedure] §700.140[, subd.] (b)]. BBVA violated Section 700.140[, subdivision] (d) when it failed to identify and turn over the funds from the . . . alleged trust account pursuant to the levy and thereafter allowed the Debtors to withdraw from the accounts while the execution lien was in effect." But neither subdivision (b) nor (d) of section 700.140 states BBVA had an "immediate" duty to turn over the funds from the DAX Family Trust account. (See § 700.140, subd. (b) ["The execution lien that arises upon service of a writ of execution and notice of levy reaches only amounts in a deposit account at the time of service on the financial institution . . . "]; § 700.140, subd. (d) ["The financial institution shall not honor a withdrawal request or a check or other order for the payment of money from the deposit account if presentment of the withdrawal request or item to the

financial institution occurs during the time the execution lien is in effect unless, following the withdrawal or payment, sufficient funds are available to cover the levy"].) Rather, under section 701.020, subdivision (a), BBVA is liable for noncompliance with the levies only if it "fail[ed] or refuse[d] [to comply with the levy] without good cause to do so." This brings us to Zohrabian's second point.

As discussed above, it is undisputed the DAX Family Trust account was: (1) held in the name of the trust, not the judgment debtors, who were merely identified as trustees; (2) associated with a different address than the one identified in the levies; and (3) associated with a TIN not included in the levies. Moreover, the levying documents did not identify the DAX Family Trust account, or any trust account, as a judgment debtor. With no levy naming the trust (or including trust account funds generally), and no matching account holder name, customer address, or TIN, BBVA declined to automatically seize the funds in the DAX Family Trust account absent a court order specifically authorizing seizure from that account. Based on this undisputed evidence, we conclude BBVA met its prima facie burden of demonstrating an element of Zohrabian's claim cannot be established, i.e., that BBVA did not have "good cause" when it declined to comply with the levies.

The burden therefore shifted to Zohrabian to establish the existence of a triable issue of fact regarding the "good cause" element of its claim under section 701.020. (§ 437c, subd. (p)(2).) Zohrabian relies on three purported material triable issues of fact regarding whether BBVA had good cause to not immediately comply with the levies. As discussed in greater detail below, however, none of these facts go directly to the heart of the issue,

8

which is that the levying documents did not identify the DAX Family Trust account or any trust account as a judgment debtor, and BBVA was not in possession of any documents demonstrating the judgment debtors were settlors of the DAX Family Trust.[5]

First, Zohrabian argues BBVA did not comply with its own internal policy by failing to obtain a copy of the DAX Family Trust origination document when the trust account was created. If it had, according to Zohrabian, the document would have "definitively proven" that the judgment debtors were the settlors, trustees, and beneficiaries of the DAX Family Trust. Zohrabian provides no support for her speculative statement, however. Nor does she cite to any authority that imposes liability on BBVA for its alleged failure to obtain trust documents before opening the DAX Family Trust account. Zohrabian could have, but did not, request documents from the judgment debtors identifying who opened the trust account and the trust beneficiaries. (See § 708.030, subd. (a) ["judgment creditor may demand that any judgment debtor produce and permit the party making the demand, or someone acting on that party's behalf, to inspect and to copy a document that is in the possession, custody, or control of the party on whom the demand is made . . . if the demand requests information to aid in enforcement of the money judgment."].)

---

5      If the judgment debtors were settlors of the DAX Family Trust, and the settlors retained the power to revoke the trust in whole or in part, the trust property is subject to the "claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." (Prob. Code, § 18200.)

Without documents demonstrating the judgment debtors were the settlors of the DAX Family Trust, BBVA could not seize the funds in the trust account even if the judgment debtors were the sole beneficiaries—their beneficial interests would not be subject to a writ of execution without first petitioning the trial court for an order. (See § 709.010 ["The judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition under [section 709.010] by a judgment creditor to a court having jurisdiction over administration of the trust as prescribed in [section 17000, et seq.] of the Probate Code."]; see also *FirstMerit Bank, N.A. v. Reese* (2015) 242 Cal.App.4th 408, 412 ["By its plain terms, the enforcement procedures of section 709.010 are the only means available for a judgment creditor to enforce a money judgment against an interest in a trust"].)

Moreover, Zohrabian claims BBVA knew from an examination of the bank account statements of the DAX Family Trust that transfers of funds between the trust account and the individual accounts of the judgment debtors regularly occurred. But contrary to her contention, BBVA had no duty to supervise account activity or inquire into the purpose for which account funds were being used. (See *Grover v. Bay View Bank* (2001) 87 Cal.App.4th 452, 456 ["The relationship of bank and depositor [is that of debtor and creditor, and it] is founded on contract" . . . This contractual relationship does not involve any implied duty "to supervise account activity" . . . or "to inquire into the purpose for which the funds are being used" . . ."].)

Next, Zohrabian contends BBVA "willfully or negligently" failed to properly comply with the requirements of the statutorily required Memorandum of Garnishee (MOG). The MOG states

that if BBVA "will not deliver to the levying officer any property levied upon" it must "describe the property and the reason for not delivering." It further asks BBVA to describe any property of the judgment debtor not levied upon that is in BBVA's possession or control. BBVA did not respond to these line items. Even assuming BBVA failed to provide complete information in the MOG, however, the remedy provided in the EJL is that BBVA may, "in the court's discretion[,]" be required "to pay the costs and reasonable attorney's fees incurred in any proceedings to obtain the information required in the garnishee's memorandum." (§ 701.030, subd. (d).) It is not, as Zohrabian appears to contend, to hold BBVA liable for the amount of the levy. That remedy is reserved for noncompliance with a levy. (See § 701.020, subd. (a)(1) & (2) [if a third person fails or refuses to comply with a levy without good cause to do so, the third person is liable to the judgment creditor for the lesser of "[t]he value of the judgment debtor's interest in the property or the amount of the payments required to be made" or "[t]he amount required to satisfy the judgment pursuant to which the levy is made."].)

Finally, we reject Zohrabian's argument that BBVA's violation of section 700.140, subdivision (d), triggered the consequences enumerated in section 701.020. Section 700.140, subdivision (d), provides, in relevant part: "The financial institution shall not honor a withdrawal request or a check or other order for the payment of money from the deposit account if presentment of the withdrawal request or item to the financial institution occurs during the time the execution lien is in effect unless, following the withdrawal or payment, sufficient funds are available to cover the levy." It is undisputed that BBVA did, in fact, send the levying officer a memorandum of garnishee

11

capturing $399.02 from Belle's personal checking account. Zohrabian does not argue BBVA permitted withdrawals from that account during the time the execution lien was in effect. The issue here is whether BBVA had good cause for its refusal to seize funds from the DAX Family Trust account when no levying document named the trust, or any trust account funds generally. Thus, section 700.140, subdivision (d), is inapplicable.

In sum, the parties do not dispute that property in a revocable trust can be subject to a levy. Here, however, the levying documents did not identify the DAX Family Trust account or any trust account as a judgment debtor and, based on documents in its possession, BBVA could not determine whether the judgment debtors were the settlors of the DAX Family Trust. On this record, we conclude Zohrabian failed to proffer any evidence to dispute BBVA's showing that it had good cause when it declined to deliver the DAX Family Trust account funds to the levying officer without a court order authorizing seizure of funds from that account.

## DISPOSITION

The judgment is affirmed. PNC is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, Acting P. J.

We concur:


MORI, J.


ZUKIN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.